Dear Senator Hainkel:
You have requested an opinion of the Attorney General relating to the premium license tax credit an insurance company (Insurco) receives for investing in a certified Louisiana capital company (CAPCO). The factual scenario you present for our consideration in rendering the opinion is as follows.
Insurco proposes to make a loan of $30,000,000 to a CAPCO. If the loan qualifies as an "investment" in a CAPCO pursuant to R.S.22:1068(E)(1) and 51:1921 et seq., it will entitle Insurco to a 120% credit against its premium taxes (i.e., $36,000,000). You ask us to assume that the maximum amount of this credit that Insurco can use against its premium license tax liability in a given year is 10% of the 120%, or $3,600,000.
Insurco further proposes to make this investment/loan of $30,000,000 at an interest rate which will amortize the loan at the rate of $3,600,000 per year, inclusive of interest and principal. The loan will be represented by a non-negotiable well-secured promissory note and will have a stated maturity date of approximately ten years. Should Insurco qualify for the $3,600,000 credit per year, the CAPCO will not have to make the $3,600,000 annual installment payments. Rather, the installments will be effectively repaid by the premium tax credit. An actual cash principle payment will be made at maturity.
You also ask us to assume, for purposes of this opinion, that the CAPCO meets all requirements for certification and is, in fact, certified by the Office of Financial Institutions (OFI).
You first ask whether the proposed loan to the CAPCO, which is intended to be largely repaid by the premium license tax credit, but which will actually be repaid by the CAPCO if the credit becomes unavailable, qualifies as an "investment" by Insurco within the meaning of R.S. 22:1068(E)(1) and LAC 10:XV.305(A).
In answer to your first question, I refer you to R.S.22:1068(E)(1) which provides, in pertinent part:
 "E. (1) . . . the premium tax reduction for insurers investing in certified capital companies as defined in R.S. 51:1921 et seq., . . . shall be computed as one hundred and twenty percent of the amount of the investment at the time the investment is made. The investment shall be in the form of cash and/or debt instruments which are obligations of the investing insurance company to the certified capital company . . . . Such year from the date of the investment."
While Section 1068(E) does not provide a definition of "investment", 1068(C)(e) provides:
 "For the purposes of this Part, `a qualifying Louisiana investment' is hereby defined as:
* * *
 (e) . . . other loans to residents of this state, or to corporations domiciled in this state;"
Regulation LAC 10:XV.305A further provides that if the investment takes the form of debentures, notes or any other quasi-equity/debt instruments, they must have an original maturity date of at least five years after the investment and not be redeemed or repurchased for at least five years from issuance. Further, amortization of a note over its stated maturity date does not constitute a redemption.
Applying the statutory and regulatory provisions discussed above, it is the opinion of this office that the loan transaction proposed by Insurco as set out in your request constitutes an "investment" by Insurco in the CAPCO within the meaning of R.S.22:1068(C) and (E)(1) and LAC 10:XV.305A.
Your second question pertains to the ramifications caused by a decertification of the CAPCO. R.S. 51:1927 directs the secretary of the Department of Economic Development (DED) through OFI to conduct annual reviews of each CAPCO to verify their continued compliance with the requirements necessary for certification. Thus, for example, R.S. 51:1926 requires the CAPCO to make qualified investments according to the schedule and subject to the limitations therein. Violations may result in decertification.
R.S. 51:1927 provides, with regard to decertification, the following:
 "B. Any violation of R.S. 51:1926 may be grounds for decertification under this Section. If the secretary determines that a company is not in compliance with any requirements of R.S. 51:1926, he shall, by written notice, inform the officers of the company and the board of directors, partners, managers, or members that they may be subject to involuntary decertification in one hundred twenty days from the date of mailing of the notice unless they correct the deficiencies and are again in compliance with all requirements for certification.
 C. At the end of the one hundred twenty-day grace period, if the certified Louisiana capital company is still not in compliance, the secretary shall send a notice of involuntary decertification to the company, to the secretary of the Department of Revenue and Taxation, and the commissioner of the Department of Insurance. Voluntary or involuntary decertification of a certified Louisiana capital company may cause the forfeiture of the investor's remaining and unclaimed income tax credits under this Chapter and premium tax credits under R.S. 22:1068(E), and shall cause the recapture of said credits taken by investors to be due and payable by the certified Louisiana capital company and other investors according to their pro-rata share of the credits earned to the Department of Revenue and Taxation or the Department of Insurance in the year of decertification as follows:
 (1) One hundred percent of all credits taken by investors shall be due and payable and any remaining and previously unclaimed investor credits forfeited, if a certified Louisiana capital company is decertified, due to its inability to comply with all requirements for continued certification under the provisions of R.S. 51:1926, within three years of the date of certification." (Emphasis added).
Should the CAPCO be involuntarily decertified within three years of the date of certification, you ask who is responsible, as between CAPCO and Insurco, for the repayment of the credits previously taken by Insurco.
It is the opinion of this office that Section 1927(C) clearly provides that the recapture of premium tax credits taken by investors (i.e., Insurco) are due and payable by the CAPCOand other investors (i.e., Insurco) according totheir (i.e., the investors') pro-rata share of the credits earned. We find support for our (i.e., the investors') position by referring to the language contained in Section 1927(C) prior to its amendment by Act 279 of the 1993 Regular Session of the Louisiana Legislature. The paragraph previously read, in pertinent part:
 "The decertified company is solidarily liable with each investor in the company for the repayment of said credit." (Emphasis added.)
As can be gleaned from the above, the obvious purpose of the 1993 amendment was to relieve the investor(s) of solidary liability for the recapture payments. Under the present law, Insurco is only responsible for the repayment of its pro-rata share of the credits earned. Other investors will, likewise, be responsible for their respective shares. We believe this to be a risk assumed by Insurco by virtue of its investment in CAPCO.
Your third question asks us to assume that, by the end of the third year after certification, the CAPCO has not invested at least 50% of the capital certified within three years after certification with 30% in qualified Louisiana businesses so that the credits Insurco took during the first three years are subject to recapture. Assume, alternatively, that by the end of the sixth year after the investment, but before voluntary decertification, the CAPCO is involuntarily decertified because of a violation of a provision of R.S. 51:1927, but Insurco, being unaware of the violation, nevertheless takes the credit for the year. You ask what is the prescriptive period on collection of the premium tax due because of an improperly taken credit by Insurco?
In answer to your question I refer you to Article VII, Section 16
of the Louisiana Constitution of 1974. It provides:
 "Section 16. Taxes, except real property taxes, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law."
As can be gleaned from the above, unless prescription is interrupted or suspended by law, a cause of action for the recapture or repayment of premium tax credits as a result of an involuntary decertification will prescribe in three years after the 31st day of December in the year in which the involuntary decertification occurred.
We have reviewed the legal provisions contained in Title 22 relating to the collection of premium license taxes by the Commissioner of Insurance and can find no authority for the interruption and/or suspension of prescription thereon. While interruptive and suspensive provisions exist for taxes administered by the secretary of the Department of Revenue and Taxation, we do not believe they are applicable to premium license taxes.
In the case of voluntary decertification under R.S. 51:1928(A), the statute provides, in pertinent part:
 "A. At any time a certified Louisiana capital company may voluntarily decertify itself by sending written notice of decertification to the secretary and by remitting to the secretary of the Department of Revenue and Taxation and the commissioner of the Department of Insurance full payment, as provided in R.S. 51:1927(C), of premium and income tax credits claimed by investors under their participation in the certification program. These amounts are due notwithstanding the fact that the years for which the credits were originally taken may have prescribed. Thereafter, the capital company shall be a full subrogee to the state of Louisiana through the Department of Revenue and Taxation for such sums as were remitted by the company, against its investors or equity owners." (Emphasis added.)
As can be seen from the above, prescription is suspended and/or does not commence to run until the premium license tax becomes recapturable. Thus, prescription would commence on December 31st of the year in which the refund provision is triggered and would run for three years thereafter. In the case of the erroneously taken credit, prescription would commence on December 31st of the year the credit was erroneously taken and run for three years thereafter.
Your final question asks whether the Louisiana legislature may retroactively revoke and eliminate tax credits earned by insurance companies which have invested in CAPCO's. In other words, can the legislature rescind the allowance of any remaining tax credit(s) to be earned in a year subsequent to the year in which the investment was made. For the following reasons, this office is of the opinion that a law enacted having the effect of retroactively revoking and/or eliminating premium license tax credit(s) to be earned in years subsequent to the year in which the investment was made would be subject to constitutional challenge.
We find the following provisions of the Louisiana Constitution of 1974 applicable to this issue:
Article 1, Section 2. Due Process of Law
 Section 2. No person shall be deprived of life, liberty, or property, except by due process of law.
 Article 1, Section 4. Right to Property
 Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
 Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
* * *
Article 1, Section 23. Prohibited Laws
 Section 23. No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
Sections 2 and 4 both limit the state's ability to deprive a person of property rights. Although an insurance company may take a credit against its premium taxes over a minimum period of ten years, the credit is actually earned and determined in the year that the investment is originally made in the CAPCO. As such, it becomes fixed and determined and a vested property right owned by the insurance company. The removal of this vested property right without due process and/or just compensation could be viewed as a violation of Sections 2 and 4.
With regard to the prohibition against the impairment of contracts, initially, it should be noted that this prohibition is not absolute. The U.S. Supreme Court has held that, although the Contract Clause appears literally to proscribe any
impairment, it does not require a state to adhere to a contract that surrenders an essential attribute of its sovereignty.United States Trust Co. of New York v. New Jersey,431 U.S. 1, 23, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977). While this office is cognizant of the exceptions to the prohibition against contract impairment, we do not believe they are applicable to the issue at hand. The CAPCO program is designed to promote and improve the economy of the state and its citizens. This obviously does not constitute a surrender of the state's sovereignty.
It is the opinion of this office that a retroactive revocation and/or elimination of premium license tax credits could be viewed as a violation of Section 23. While there is no jurisprudence directly on point, we draw your attention to the related case ofHilton Hotels Corp. v. Parish of Jefferson,247 So.2d 843 (La. 1971). The case involved a conflict between Section 47 of Article XIV of the Louisiana Constitution and a Jefferson Parish Ordinance. Section 47 created the Louisiana Stadium and Exposition District and authorized the District to levy and collect a tax upon the occupancy of rooms of hotels and motels situated in Jefferson Parish. Prior approval of Jefferson Parish was necessary since the Jefferson Parish sales tax on such rooms was to be abated. The Jefferson Parish Council passed Ordinance No. 8318 which abated and exempted the sales taxes. Three years later, the Jefferson Parish Council revoked Ordinance No. 8318 and passed a new ordinance reimposing the local sales tax. The Louisiana Supreme Court held that this revocation violated the Louisiana Constitution's protection from ex post facto laws, stating:
 "While all retrospective laws are not invalid, those which divest vested rights fail constitutionally. We have recognized that "rights once legally established cannot be divested by the repeal of the law authorizing their creation . . . The Jefferson Parish Council cannot by subsequent ordinance repeal its action which abated the tax for the benefit of the District — a tax which has now become vested in that body and has also become obligated to the discharge of contracts with third parties."
In City of New Orleans v. Southern Bank, 11 La. Ann. 41 (1856), an ordinance of the City of New Orleans imposed a license tax on the stock of banks created under the general banking law of Louisiana. The general banking law provided that such stock would not be taxed in any manner other than as personal property. In invalidating the New Orleans ordinance, the court held that the provision of the general banking law was intended for the security of the person investing in the stock of the bank (the "capitalist"), and was an assurance to him that if he invested his money in the banks, under this law, his stock would be taxed at the same rate as other personal property. The court held that such an assurance possessed the force of an obligation and could not be revoked by the New Orleans ordinance. See also Stateof Louisiana v. Southern Bank, 23 La. Ann. 271 (1871).
In summary, it is the opinion of this office that (1) the proposed loan transaction by Insurco to CAPCO as outlined in your request qualifies as an "investment" within the meaning of R.S.22:1068(E)(1) and LAC 10:XV.305(A), (2) Insurco is responsible for the repayment of its pro-rata share of credits earned in the event that CAPCO is involuntarily decertified, (3) the three-year prescriptive period for the recapture of premium license tax refunds in the event of decertification commences on December 31st of the year in which decertification occurs and runs for three years thereafter, and (4) a law passed by the legislature retroactively revoking or eliminating premium license tax credit(s) would be subject to constitutional challenge.
Trusting this sufficiently addresses your questions, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/bb
0325R
Honorable John J. Hainkel, Jr. State Senator State of Louisiana District 6 6069 Magazine Street New Orleans, LA 70118
Date Received: 05-12-94
Date Released:
ROBERT E. HARROUN, III Asst. Attorney General